# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### DECEMBER 1998 SESSION



**FILED**

**May 27, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | |
|---|---|
| **STATE OF TENNESSEE,** | ) |
| | ) C.C.A. No. 02C01-9805-CR-00129 |
| Appellee, | ) |
| | ) Shelby County |
| V. | ) |
| | ) Honorable W. Fred Axley, Judge |
| | ) |
| **STANLEY O. ABELL,** | ) (Disorderly Conduct, Assault) |
| | ) |
| Appellant. | ) |

FOR THE APPELLANT:

ROBERT L. J. SPENCE, JR.
KAREN R. CICALA
67 Madison Avenue, Suite 200
Memphis, TN 38013

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

PETER M. COUGHLAN
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

WILLIAM L. GIBBONS
District Attorney General

ROSEMARY ANDREWS
Assistant District Attorney General
Criminal Justice Center, Third Floor
201 Poplar Avenue
Memphis, TN 38103

OPINION FILED: _____

**AFFIRMED**

**JOHN EVERETT WILLIAMS,**
Judge

## OPINION

The defendant, Stanley O. Abell, was tried by a jury and convicted of assault and disorderly conduct. The trial court sentenced him to eleven months and twenty-nine days' confinement for the assault and to thirty days' confinement for the disorderly conduct. The defendant appeals, challenging both his convictions and sentences. We AFFIRM the judgment of the trial court.

## BACKGROUND

On September 3, 1996, the defendant went to the Willow Oaks Elementary School to pick up his daughter from her fifth-grade class. Despite signs instructing visitors to sign-in at the office, the defendant went directly to his daughter's classroom and demanded that she be allowed to go with him. His daughter's teacher, Josephine Leatherwood, advised the defendant that, because it was prior to the end of classes, school policy required that he get a dismissal slip from the office before she could let his daughter leave. The defendant retorted that it was his daughter and that Leatherwood could not stop him from taking her. Nevertheless, when Leatherwood insisted, the defendant started toward the office. After a short distance, however, he turned back toward the classroom. Watching this, and already suspecting trouble, Leatherwood immediately sent her students, except the defendant's daughter, to another room.

When the defendant's daughter saw him returning, she began to cry. She told Leatherwood that she was supposed to go to an after-school program, after which she was to be picked up by her mother. Hearing this, Leatherwood decided to take the defendant's daughter to the office and address the situation there.

Leatherwood put her arm around the defendant's daughter and started toward the door of her classroom. At that point, the defendant entered the

classroom and began yelling that Leatherwood could not stop him from taking his daughter.  Still crying, his daughter dropped her book bag, jumped behind Leatherwood, and, holding to her waist, began screaming that she was not supposed to go with the defendant.

Leatherwood testified that the defendant then grabbed her left arm and dug his fingernails into her.  Leatherwood calmly told the defendant that he was hurting her and told him to remove his hands.  Instead, the defendant seized her left hand and began bending her fingers back, all the while shouting that Leatherwood could not stop him from taking his daughter.  Apparently still unsatisfied, the defendant then twisted Leatherwood's arm behind her back and repeatedly stomped her open-toe shoe and foot.

At that point, another teacher, Barbara McCloskey, and the school custodian, Anthony Smith, came to assist Leatherwood.  When McCloskey entered the room, the defendant's daughter ran to her, grabbed her around the waist, and moved with her into the hall.  Smith reminded the defendant, who continued to behave belligerently, that he was in a school and told him to be quiet.  The defendant retorted that Smith should "mind his own business" and told him, "I'm a professor, and you can't tell me what to do . . . .  You're just a custodian."

Eventually the defendant gained control of Monique and led her to his car, which, as further demonstration of his arrogant disregard for the law and others, he had parked in a handicap spot.  During the disturbance, however, the school principal had called the police.  Officers arrived and arrested the defendant before he could leave.

**SUFFICIENCY OF THE EVIDENCE**

The defendant asserts that the evidence at trial was insufficient to support his conviction of either assault or disorderly conduct. When an accused challenges the sufficiency of the evidence, this Court must determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). The appellee is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom. See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

The credibility of witnesses, the weight of their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the trier of fact. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Gentry, 881 S.W.2d 1, 3 (Tenn. Crim. App. 1993). A jury verdict for the state accredits the testimony of the state's witnesses and resolves all conflicts in favor of the state. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Moreover, a guilty verdict removes the presumption of innocence enjoyed by defendants at trial and replaces it with a presumption of guilt. See State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Thus, an appellant challenging the sufficiency of the evidence bears the burden of illustrating to this Court why the evidence is insufficient to support the verdict. See State v. Freeman, 943 S.W.2d 25, 29 (Tenn. Crim. App. 1996).

The defendant has failed to carry this burden. The disorderly conduct statute provides, "(a) A person commits an offense who, in a public place and with intent to cause public annoyance or alarm: (1) Engages in fighting or in violence or threatening behavior . . . . (b) A person also violates this section who makes unreasonable noise which prevents others from carrying on lawful

activities." Tenn. Code Ann. § 39-17-305(a)(1), (b). The defendant argues that the state failed to produce evidence of either "intent," as required by subpart (a)(1), or "unreasonable noise that prevents others from carrying on lawful activities," as required by subpart (b).

We disagree. With regard to the evidence of intent, it is clearly established that a trier of fact may infer the element of intent from circumstantial evidence. See, e.g., State v. Chrisman, 885 S.W.2d 834, 838 (Tenn. Crim. App. 1994). The state presented overwhelming evidence of the defendant's truculent behavior, and this evidence was clearly sufficient for a reasonable trier of fact to infer that the defendant intended to cause public annoyance or alarm. As to subpart (b), the school custodian testified that he told the defendant to be quiet, reminding him that he was in a school. And, the state's proof indicated that at least six school staff members responded to the disturbance by the defendant. This evidence was sufficient for the jury to reasonably conclude that the defendant created "unreasonable noise that prevent[ed] others from carrying on lawful activities." Thus, we find the evidence sufficient as to either provision of the above cited statute.

As to his assault conviction, the defendant does not assert that the state failed to produce competent evidence of any statutory element. See Tenn. Code Ann. § 39-13-101(1)-(2). Rather, he merely reassert his version of events--for example, that he only "gently touched" Ms. Leatherwood's arm--and argues that the jury's verdict was against the weight of the evidence. The defendant thereby asks this Court to reweigh the evidence presented at trial. This we cannot do. The credibility of witnesses and the weight to be accorded their testimony are matters reserved to the trier of fact; the jury was entitled to credit the state's proof and discredit that of the defendant. This issue is without merit.

**JUDICIAL CONDUCT**

-5-

The defendant next argues that certain comments of the trial judge, made in the presence of the jury, were inappropriate and prejudicial. The defendant testified at trial but was consistently evasive of the state's questions on cross-examination. Because of this evasiveness, the trial judge admonished the defendant to answer the state's questions directly. On another occasion, the court questioned the defendant to clarify contradictory responses. In his brief to this Court, the defendant quotes these exchanges from the trial transcript. His entire argument, then, is that "[s]uch statements are detrimental to the defendant in that it leaves [sic] the jury with the impression that the judge is ruling that the defendant is not being candid in his testimony. The judge in effect is impeaching the defendant's testimony."

The defendant cites no authority in support of this argument. See Tenn. R. App. P. 27(a)(7) (requiring citation to relevant authority in appellant brief). This issue is, therefore, waived. See Tenn. Ct. Crim. App. R. 10(b); State v. Hammons, 737 S.W.2d 549, 552 (Tenn. Crim. App. 1987).

Notwithstanding waiver, we have examined the trial transcript, and we find nothing inappropriate in the trial court's comments. A trial judge possesses broad discretion in controlling the course and conduct of trial, as such discretion is necessary to conduct an orderly proceeding. "[T]he propriety, scope, manner and control of testimony . . . is within the sound discretion of the trial court, which will not be reversed absent an abuse of that discretion." State v. Elroy D. Kahanek, No. 01C01-9707-CC-00298 (Tenn. Crim. App. filed June 30, 1998, at Nashville) (citing State v. Hutchinson, 898 S.W.2d 161, 172 (Tenn. 1994)). We find no abuse of discretion. This issue is without merit.

**SENTENCING FACTORS**

The appellant next complains that his sentences are excessive. When an accused challenges the length or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record "with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). In conducting our review, we must consider (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) any statutory mitigating or enhancement factors; (6) any statement made by the accused in his own behalf; and (7) the potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987). The appellant carries the burden of showing that his sentence is improper. See Tenn. Code Ann. § 40-35-401(d) sentencing comm'n cmts; State v. Jernigan, 929 S.W.2d 391, 395 (Tenn. Crim. App. 1996).

Misdemeanor sentencing is designed to provide the trial court with continuing jurisdiction and a great deal of flexibility. A misdemeanant is not entitled to a presumption of minimum sentence. See State v. Seaton, 914 S.W.2d 129, 135 (Tenn. Crim. App. 1995). Further, the trial court is not limited to consideration of the statutory enhancement and mitigating factors in determining the appropriate sentence, but should examine misdemeanor offenses in light of the circumstances of the offense. See State v. Brannon, No. 03C01-9508-CR-00233 (Tenn. Crim. App. filed Apr. 3, 1996, at Knoxville). Nevertheless, the trial court must consider the statutory enhancement and mitigating factors and the purposes and principles of the Sentencing Reform Act when determining the portion of a sentence to be served in confinement. See Tenn. Code Ann. § 40-35-302; State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994).

In the present case, two enhancement factors are applicable: The offense involved more than one victim, see Tenn. Code Ann. § 40-35-114(3); and the defendant committed the offense while on school property, see Tenn. Code Ann. § 40-35-114(17). The trial court recognized no mitigating factors; however, the defendant proposes that the following apply:

> "The defendant's criminal conduct neither caused nor threatened serious bodily injury," Tenn. Code Ann. § 40-34-113(1);

> The defendant's criminal history is not extensive;

> "The defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct," Tenn. Code Ann. § 40-34-113(11); and

> The defendant exhibited remorse.

Although we hesitate to characterize Leatherwood's injuries as "serious," the defendant's actions clearly threatened serious injury to both Leatherwood and others. Thus, this factor is not applicable.

As for the defendant's criminal history, we agree with the trial court that the defendant's relative minor record may be insufficient to warrant sentence enhancement. Nevertheless, neither does this record merit mitigation. The defendant's presentence report indicates one conviction for driving on a revoked license and an unprosecuted bad check charge. Of greater significance to this Court, the defendant's ex-wife testified at his sentencing hearing regarding several previous violent encounters with the defendant arising from a custody dispute between the couple. She stated that on one occasion, police officers had to remove the defendant from her premises after he attempted to break into her home. On another occasion, the defendant took the couple's two children and barricaded himself in his home until police facilitated the return of the children to Ms. Abell. Finally, she testified that she had sworn out a complaint against the defendant for allegedly attempting to run over her with his car.

These incidents clearly indicate a history of criminal behavior and, therefore, preclude application of this factor in mitigation of the defendant's sentence.

Neither do we find that the defendant committed his offenses "under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct." The unusual circumstance to which the defendant would attribute his behavior is his ongoing custody dispute with his ex-wife. However, as noted above, the record indicates that the defendant has reacted violently during several previous incidents involving the custody of his children. The continuing nature of this custody dispute, combined with the defendant's consistently aggressive responses, hardly suggests that this circumstance is unusual in his case. Moreover, the instant offense extended over a significant period of time and continued through, by all accounts, remarkably calm responses from Leatherwood and others school staff members. We cannot conclude that the defendant's offenses were motivated by anything other than a sustained intent to terrorize members of the school staff.

Finally here, the defendant asserts that the trial court erred in failing to recognize his alleged remorse as a mitigating factor. Our examination of the record reveals no significant expression of remorse by the defendant. To the contrary, the defendant has never even admitted that his actions were wrongful. He stated only that he would abide the jury's decision as to his guilt.

For these reasons, we find none of the proposed mitigating factors applicable. The trial court did not err in sentencing the defendant to the maximum punishment for each of his offenses.

## ALTERNATIVE SENTENCING

We next examine the defendant's challenge to the trial court's denial of alternative sentencing. We begin by inquiring whether the defendant is entitled

to be presumed a favorable candidate for alternative sentencing. The defendant argues that because one convicted of a class C, D, or E felony is presumed a favorable candidate, see Tenn. Code Ann. § 40-35-102(6), this presumption should logically extend to one convicted of a misdemeanor. There is case law to support this argument. See, e.g., State v. Boyd, 925 S.W.2d 237, 245 (Tenn. Crim. App. 1995). However, there is also case law to the contrary. See State v. Williams, 914 S.W.2d 940, 949 (Tenn. Crim. App. 1995) ("The presumption is limited in scope to an accused who is convicted of a Class C, D or E felony. It does not apply to an accused convicted of a misdemeanor."). Albeit in parenthetical dicta, the Tennessee Supreme Court recently cited the Williams holding in State v. Troutman, 979 S.W.2d 271, 273 (Tenn. 1998). Moreover, the reasoning of Troutman is persuasive. Addressing whether a trial court must record findings in misdemeanor sentencing, the Troutman Court stated, "[T] he legislature has indicated the ability to clearly mandate specific findings on the record in felony sentencing. Had the legislature intended this practice in misdemeanor sentencing, it could have so stated." Id. at 274. Similarly, we conclude, the legislature has indicated the ability to clearly mandate a presumption of favorable candidacy for alternative sentencing for class C, D, or E felons. Had the legislature intended this presumption to apply to misdemeanants, it could have so stated. We therefore read the statute for what it says, not what might be inferred, and conclude that the defendant is not entitled to a presumption of favorable candidacy for alternative sentencing.

Moreover, even if the presumption generally applied, we would find it rebutted in this case. The trial court found that confinement is necessary to avoid depreciating the seriousness of the offense. See Tenn. Code Ann. § 40-35-103(1)(B). To impose confinement based on the seriousness of the offense, "'the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree,' and the nature of the offense must outweigh

all factors favoring a sentence other than confinement." State v. Bingham, 910 S.W.2d 448, 454 (Tenn. Crim. App. 1995) (quoting State v. Hartley, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991)). Although neither assault nor disorderly conduct is inherently horrifying, violent, etc., relative to many other offenses, "the circumstance of the offense[s] as committed" were clearly "especially reprehensible" and "of an excessive or exaggerated degree." Further, although the defendant is entitled to consideration of factors, such as his community service, that tend to favor alternative sentencing, we conclude that the seriousness of the defendant's offenses outweighs all such factors.

Finally here, we consider separately the trial court's denial of probation, as that analysis differs from the denial of alternative sentencing generally. While the defendant is statutorily eligible for probation and must automatically be considered, "the defendant is not automatically entitled to probation as a matter of law." Tenn. Code Ann. § 40-35-303(b) sentencing comm'n cmts; see State v. Hartley, 818 S.W.2d 370, 373 (Tenn. Crim. App. 1991). Rather, the defendant has the burden of establishing his suitability for probation. See Tenn. Code Ann. § 40-35-303(b); State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996).

In determining whether to grant or deny probation, the trial courts are directed to consider the circumstances of the offense; the defendant's criminal record, social history, and present condition; the need for deterrence; and the best interest of the defendant and the public. See State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Boyd, 925 S.W.2d 237, 244 (Tenn. Crim. App. 1995); State v. Black, 924 S.W.2d 912, 917 (Tenn. Crim. App. 1995). The defendant's credibility, or lack thereof, is also an appropriate consideration and reflects on a defendant's potential for rehabilitation. See State v. Dowdy, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994). And, "[i]t is well settled that [a defendant's] lack of candor may serve as the sole basis for denying probation." State v. James T. Bingham, No. 01C01-9604-CC-00159 (Tenn. Crim. App. filed

Dec. 15, 1997, at Nashville) (citing <u>State v. Dykes</u>, 803 S.W.2d 250 (Tenn. Crim. App. 1990)).

The trial court duly considered these factors, and the evidence, particularly the defendant's lack of candor and credibility, supports the trial court's decision.

**CONSECUTIVE SENTENCING**

Finally, the defendant argues that the trial court erred in ordering that his sentences run consecutively. The state correctly concedes that consecutive sentencing is not warranted in this case, as none of the statutory criteria is applicable. <u>See</u> Tenn Code Ann. § 40-35-115. Nevertheless, although the trial court stated at the sentencing hearing that the sentences would run consecutively, the judgment sheet as ultimately completed imposes concurrent service. We therefore find no error, but we clarify that the defendant's sentences are to be served concurrently.

**CONCLUSION**

The judgment of the trial court is AFFIRMED.

_____
JOHN EVERETT WILLIAMS, Judge

CONCUR:

(SEE CONCURRING OPINION)
GARY R. WADE, Presiding Judge

_____
THOMAS T. WOODALL, Judge

-12-